**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


<u>Thomas and Frances Frangos</u>

     **v.**                                                  Civil No. 13-cv-472-PB
                                                          Opinion No. 2014 DNH 159
<u>Bank of America, N.A., et al.</u>


<u>**MEMORANDUM AND ORDER**</u>


Thomas and Frances Frangos have filed a petition to enjoin
a foreclosure sale of their home in Portsmouth, New Hampshire.
The Frangoses challenge the legality of Bank of New York
Mellon's efforts to foreclose and Bank of America's actions in
servicing their loan.  Both banks have argued in a motion to
dismiss that the petition fails to state a viable claim for
relief.


## I.  <u>BACKGROUND</u>

Thomas Frangos obtained a mortgage loan from Optima
Mortgage Corporation in April 2005.  To secure the loan, he
executed a note in favor of Optima and he and his wife, Frances,
granted a mortgage to the Mortgage Electronic Registration
Systems, Inc. ("MERS") as Optima's nominee.  In 2007, Frangos
defaulted on the loan and subsequently filed for Chapter 7

bankruptcy protection.  During the course of the bankruptcy proceedings, Bank of America's predecessor, Countrywide Home Loans, Inc., sought permission to foreclose the mortgage on behalf of Bank of New York.  Countrywide's request became moot, however, after Frangos agreed to modify the terms of the note and reaffirmed his obligations under the note and mortgage.

Frangos thereafter remained current on his payments until at least April 2009, when he again defaulted.  Frangos attempted to work with Bank of America to further modify the loan agreement under the federal Home Affordable Modification Program ("HAMP") program.  The process was a frustrating one: after he timely submitted the required documents, the bank repeatedly informed Frangos that his application was incomplete and requested further information.  Doc. No. 1-1.  Bank of America never rendered a final decision on Frangos's HAMP application. In January and August 2013, however, it sent Frangos letters informing him of his ineligibility for the National Mortgage Settlement Principal Forgiveness Program – an entirely different program to which Frangos had not applied.

In 2011, MERS assigned the Frangoses' mortgage to Bank of New York and the bank made several attempts to schedule a foreclosure sale.  The Frangoses responded by bringing this action in Rockingham County Superior Court.  On September 27,

2013, a superior court judge issued a preliminary injunction
preventing the bank from proceeding with the proposed sale.
Bank of New York then removed the case to this court.

## II.   <u>STANDARD OF REVIEW</u>

To survive a motion to dismiss for failure to state a
claim, a plaintiff must make factual allegations sufficient to
"state a claim to relief that is plausible on its face."
<u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl.
Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  A claim is
facially plausible when it pleads "factual content that allows
the court to draw the reasonable inference that the defendant is
liable for the misconduct alleged.  The plausibility standard is
not akin to a 'probability requirement,' but it asks for more
than a sheer possibility that a defendant has acted unlawfully."
<u>Id.</u> (citations omitted).

In deciding a motion to dismiss, I employ a two-step
approach.  <u>See</u> <u>Ocasio-Hernández v. Fortuño-Burset</u>, 640 F.3d 1,
12 (1st Cir. 2011).  First, I screen the complaint for
statements that "merely offer legal conclusions couched as fact
or threadbare recitals of the elements of a cause of action."
<u>Id.</u> (citations, internal quotation marks, and alterations
omitted).  A claim consisting of little more than "allegations

that merely parrot the elements of the cause of action" may be
dismissed.  Id.  Second, I credit as true all non-conclusory
factual allegations and the reasonable inferences drawn from
those allegations, and then determine if the claim is plausible.
Id.  The plausibility requirement "simply calls for enough fact
to raise a reasonable expectation that discovery will reveal
evidence" of illegal conduct.  Twombly, 550 U.S. at 556.  The
"make-or-break standard" is that those allegations and
inferences, taken as true, "must state a plausible, not a merely
conceivable, case for relief."  Sepúlveda-Villarini v. Dep't of
Educ., 628 F.3d 25, 29 (1st Cir. 2010); see Twombly, 550 U.S. at
555 ("Factual allegations must be enough to raise a right to
relief above the speculative level.").


### III.  ANALYSIS

The Frangoses seek a permanent injunction barring the
defendants from attempting to foreclose on their home (Counts I
and IV) and requiring them to evaluate "loan modification and
other foreclosure alternatives" in good faith (Count IV).  They
also seek judgments for breach of contract (Count II) and breach
of the duty of good faith and fair dealing (Count III).  They
support their claims with three legal arguments.  First, they
argue that the defendants cannot foreclose because Bank of New

York does not hold the note.  Next, they challenge the
foreclosure by asserting that defendants failed to provide them
with the notice of default and opportunity to cure required by
the mortgage.  Finally, they claim that the defendants failed to
deal in good faith with their requests to modify the loan.  I
consider defendants' responses to each argument.

**A.**

The Frangoses first allege that Bank of New York cannot
foreclose because it does not hold the note.  In response,
defendants have produced a copy of the note that bears a series
of endorsements that culminate in a blank endorsement.
According to the defendants, the endorsements effectively rebut
the Frangoses' contention that they do not hold the note.[1]  I
reject defendants' argument because I cannot consider the
endorsements in ruling on the motion to dismiss.

Although a court may sometimes consider a document
referenced in a complaint without converting a motion to dismiss
into a motion for summary judgment, it may not do so when the
contents of the document are disputed.  See Beddall v. State St.

---

[1] Defendants also present a poorly supported argument that they
may foreclose even if they do not hold the note.  I decline to
consider this argument at the present time because the parties
have not briefed the issue with the clarity that is required to
produce a reliable ruling.

Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998).  In the
present case, defendants base their argument for dismissal on
endorsements that they allege were made at some point after the
note was issued.  The version of the note that the Frangoses
rely on does not include the endorsements and they vigorously
challenge the defendants' contention that the endorsements
empower Bank of New York to foreclose.  Under these
circumstance, I cannot rely on the endorsements in granting
defendants' motion to dismiss.[2]

**B.**

The Frangoses next contend that Bank of New York cannot
foreclose because it failed to comply with its obligation under
the mortgage to give them notice of their default and an
opportunity to cure.[3]

Defendants challenge this argument by claiming that any
failure to satisfy the notice and opportunity to cure

---

[2] Although the Frangoses do not present this argument, I also
note that, at most, the endorsements establish that the holder
of the note is authorized to enforce the note.  The endorsements
do not prove that the bank actually holds the note.  Therefore,
I could not credit defendants' argument at the present time even
if I were able to consider the endorsements.

[3] The mortgage requires that the lender give notice of any breach
or default prior to accelerating payment on the note.  The
notice must specify the default, the action required to cure the
default, and a date by which the default must be cured.  Doc.
No. 5-3.

requirement cannot serve as an impediment to foreclose because the Frangoses admit that they had actual notice of their default. This argument overlooks an important function of the notice and opportunity to cure requirement, which is to entitle the mortgagor to a specification of what he must do to cure any default and thereby hold a foreclosure. See BAC Home Loans Servicing, L.P. v. Wedereit, NO. A14A0131, 2014 WL 3057179 at *3 (Ga. Ct. App. July 8, 2014)(failure to specify action required to cure amounts to failure to provide adequate notice under contractual provision); Konsulian v. Busey Bank, N.A., 61 So.3d 1283, 1285 (Fla. Dist. Ct. App. June 1, 2011)(both notice and opportunity to cure are necessary conditions precedent in contractual provision). Accordingly, if defendants did not comply with its obligation to provide notice and an opportunity to cure, it may not proceed with the foreclosure.

Defendants alternatively contend that Countrywide provided sufficient notice and opportunity to cure when it sent the Frangoses a "Notice of Default and Acceleration" letter in September 2007. Doc. No. 5-5. In pressing this argument, they cite a decision by this court to support their contention that a mortgagee is required to give notice of a default only once. Galvin v. EMC Mortg. Corp. (Galvin I), 2013 DNH 053, 15-16. In Galvin I, however, additional notice was deemed unnecessary

because Galvin never cured his default.  Id.  Here, in
bankruptcy proceedings, Frangos signed, and Countrywide
accepted, an agreement reaffirming and modifying the terms of
his debt.  Frangos remained current on payments for at least six
months after reaffirmation.  The intervening reaffirmation and
subsequent timely payments cured the default, triggering new
notice requirements.  See Matter of Edwards, 901 F.2d 1383, 1384
n.3 (7th Cir. 1990) ("Reaffirmation would . . . cure all past
defaults."); In re Gitlitz, 127 B.R. 397, 400 (Bankr. S.D. Ohio
1991) ("The Reaffirmation Agreement . . . became a new contract
between the parties.  The parties now are bound by the terms of
this new agreement.").  Accordingly, the September 2007 notice
of default does not satisfy the bank's obligation to provide
notice of the default and an opportunity to cure.

### c.

The Frangoses' last contention is that Bank of America
breached both the implied covenant of good faith and fair
dealing and the terms of its contract by engaging in "dual
tracking" – working with mortgagees on loan modifications while
simultaneously moving for foreclosure - during the loan
modification process.

The Frangoses argue that they are not attempting to assert
a contractual right to an additional loan modification.  Rather,

they contend that once Bank of America decided to consider their request, it had a duty to do so in a commercially reasonable manner.

The Frangoses, however, have not alleged that Bank of America engaged in any misrepresentations during the modification process and they have alleged no facts that would amount to a breach of the duty of good faith and fair dealing. New Hampshire imposes no duty to forebear from foreclosure in the face of default. Ruivo v. Wells Fargo Bank, N.A., 2012 DNH 191, 10 ("Parties are bound by the agreements they enter into and the court will not use the implied covenant of good faith and fair dealing to force a party to rewrite a contract so as to avoid a harsh or inequitable result."); Moore v. Mortg. Elec. Registration Sys., Inc., 848 F. Supp. 2d 107, 130 (D.N.H. 2012) (noting that "the covenant of good faith and fair dealing in a loan agreement cannot be used to require the lender to modify or restructure the loan"). Thus, the complaint does not allege conduct by the defendants that would support a good faith and fair dealing claim.

The Frangoses also argue that Bank of America's dual tracking violated the National Mortgage Settlement[4] ("NMS"),

---

[4] The National Mortgage Settlement arose out of a joint complaint brought by the U.S. Department of Justice and the attorneys

which forbids the bank from engaging in that practice.   The
Frangoses argue that the NMS's Consent Judgment is incorporated
into their mortgage as "applicable" law through a contractual
provision which states that all rights and obligations in the
contract are subject to "any requirements and limitations of"
applicable law.  Doc. No. 5-3.[5]  The Frangoses argue that the
Consent Judgment, as applicable law, differentiates NMS from
HAMP, which does not offer a private right of action.  See,
e.g., Ruivo, 2012 DNH 191, 7 (finding that under HAMP, borrowers
"cannot sue as a third-party beneficiary to enforce a loan
servicer agreement").

     The Frangoses' attempt to incorporate the Consent Judgment
into their mortgage contract has no merit.  See Blue Chip Stamps
v. Manor Drug Stores, 421 U.S. 723, 750 (1975) ("[A] well-
settled line of authority from this Court establishes that a

---

general of forty-nine states and the District of Columbia
against five mortgage servicers, including Bank of America, to
address mortgage servicing and foreclosure abuses.  The
settlement is memorialized by Consent Judgments that set forth
servicing standards to govern each servicer's conduct.  See
generally, e.g., Consent Judgment, United States v. Bank of Am.,
No. 12-cv-00361-RMC (D.D.C. Apr. 4, 2012).

[5] "Applicable law" is defined in the contract as "all controlling
applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the
effect of law) as well as all applicable final, non-appealable
judicial opinions."  Doc. No. 5-3.

consent decree is not enforceable directly or in collateral
proceedings by those who are not parties to it even though they
were intended to be benefited by it."). There is a presumption
that third parties who stand to benefit from consent judgments
are merely incidental beneficiaries. See Cabacoff v. Wells
Fargo Bank, N.A., 2012 DNH 188, 9-10 (citing GECCMC 2005-C1
Plummer St. Office Ltd. P'ship v. JP Morgan Chase Bank, N.A.,
671 F.3d 1027, 1033-34 (9th Cir. 2012)). The language of the
applicable NMS consent judgment does nothing to rebut this
presumption. See Consent Judgment at E-15, Bank of Am., No. 12-
cv-00361-RMC ("An enforcement action under this Consent Judgment
may be brought by any Party to this Consent Judgment or the
Monitoring Committee."). Noticeably absent are any provisions
that would permit an enforcement proceeding brought by an
individual borrower as a third party beneficiary. Other courts
have thus found that the NMS provides no private right of
action. See Jurewitz v. Bank of Am., N.A., 938 F. Supp. 2d 994,
998 (S.D. Cal. 2013); Rehbein v. CitiMortgage, Inc., 937 F.
Supp. 2d 753, 760-62 (E.D. Va. 2013). I see no reason to find
otherwise.


## IV.  CONCLUSION

For the reasons discussed above, I grant defendants' motion

to dismiss (Doc. No. 5) in part.  Count III is dismissed as is any other count to the extent that it is based on a claim that defendants failed to consider the Frangoses' request for a loan modification in good faith.  The motion is otherwise denied.

SO ORDERED.


/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

July 24, 2014

cc:   John L. McGowan, Esq.
      Thomas J. Pappas, Esq.